# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| **ALICE HILLARD,** *et al.* <br><br> **Plaintiffs,** <br><br> v. <br><br> **STATE OF NEW JERSEY, SUPERIOR COURT MERCER VICINAGE, CRIMINAL DIVISION,** <br><br> **Defendant.** | Case No. 21–cv–11632–ESK–MJS <br><br><br> **OPINION** |

**KIEL, U.S.D.J.**

  **THIS MATTER** is before the Court on defendant's motion for summary judgment (Motion). (ECF No. 50; ECF No. 52 (Mov. Br.).) Plaintiffs Alice Hillard and Ruth Jordan filed an opposition to the Motion (ECF No. 53 (Opp'n)), in response to which defendant filed a reply (ECF No. 54). For the following reasons, the Motion is **GRANTED.**

  **I. FACTUAL BACKGROUND**

  Plaintiffs assert that during their over 30 years of employment with defendant, they never advanced from Judiciary Clerk 3 to Judiciary Clerk 4 positions despite applying for several promotions. (*See* ECF No. 20 (Am. Compl.).) Plaintiffs are African-American women who began their careers with defendant in Judiciary Clerk 2 positions. (ECF No. 52–4 pp. 17, 135.) Hillard, who is 59 years old, was hired by defendant in 1993 and was promoted to Judiciary Clerk 3 in May 2003. (*Id.* pp. 16, 17, 21, 124.) Jordan, who is 62 years old, was hired in 1987 and was promoted to Judiciary Clerk 3 in March 2002. (*Id.* pp. 133, 135; ECF No. 52–6 p. 2.)

In 2016, plaintiffs interviewed for a Judiciary Clerk 4 position. (ECF No. 52–4 p.105; ECF No. 52–5 p.12.) The position was, however, awarded to a Caucasian woman, who Jordan described as younger than her. (ECF No. 52–5 pp.12, 13.) In February 2018, plaintiffs and seven other female applicants interviewed for three Judiciary Clerk 4 positions. (ECF No. 52–11 pp.2–6.) The positions were awarded to two African-American women between the ages of 30 and 35, one of whom Hillard had trained, and a Caucasian woman older than plaintiffs. (*Id.*; ECF No. 52–4 pp.63–65; ECF No. 52–5 pp.2, 3.) In May 2019, defendant announced another vacancy for a Judiciary Clerk 4 position. (ECF No. 52–4 pp.76, 77; ECF No. 52–5 p.6.) Ten candidates, made up of a pool of seven African-Americans, including plaintiffs, two Hispanics, and one Caucasian, interviewed for the position. (ECF No. 52–7 pp.1–3.)[1] The position was awarded to the Caucasian applicant, who was a woman younger than plaintiffs. (*Id.*; ECF No. 52–4 pp.44, 45; ECF No. 52–5 p.10; ECF No. 52–6 p.92.)

Positions, such as the Judiciary Clerk 4 positions, are filled pursuant to the "New Jersey Judiciary Protocol For the Selection of Unclassified Non-Managerial Staff." (ECF No. 52–6 pp.4–14.) Applicants send cover letters and resumes to human resources. (*Id.* p.7.) Human resources then select applicants they deem to be qualified to interview before a panel. (*Id.* pp.7, 8.) The interview panel should be comprised of a minimum of two people who have completed the Interview Panel Orientation, which includes implicit bias training. (*Id.* pp.5, 6.) Each applicant is asked the same pre-approved questions by the panel. (*Id.* pp.8.) The "Interview Evaluation Summary

---

[1] When downloading ECF No. 52–7 as filed on the docket, an error message appears, and pages one and three of defendant's exhibit 14 are blank. Defendant's counsel provided the Court with courtesy copies of the papers related to the Motion. Accordingly, the Court cites to defendant's exhibit 14 and directs defendant to file a complete version of its exhibit 14 on the docket.

Form" is then used to arrive at a panel rating of each applicant. (*Id.* p. 9.) Ratings range from zero to four and are based on communication, interpersonal skills, motivation, technical skills, problem-solving, goal setting, and mentoring. (*Id.*) The highest-ranked applicant is selected for the position. (*Id.*) Plaintiffs ranked fifth for the 2018 interview. (ECF No. 52–8 p. 2.) For the 2019 interview, Hillard ranked tenth and Jordan ranked sixth. (ECF No. 52–11 p. 2.)

Plaintiffs attribute their low interview scores to the panelists not having been objective. (*See e.g.*, ECF No. 53–6 (Pls.' Statement of Fact) ¶ 7.) Plaintiffs also indicate that not all interview panelists were compliant with having completed their orientation. (*Id.* ¶ 77.) Plaintiffs felt "passed over" and "upset" by defendant's decision not to advance them to Judiciary Clerk 4 positions in 2018, (ECF No. 52–4 p. 67; ECF No. 53–5 p. 3), yet they did not file complaints with the New Jersey Division of Civil Rights at that time (*see* ECF No. 52–6 pp. 70–79, 83–88). Instead, they filed their complaints in October 2019 after they were not selected for the Judiciary Clerk 4 position in 2019. (*Id.*) Prior to filing her complaint, Hillard expressed to a union representative that she felt discriminated by defendant having selected a Caucasian applicant for the 2019 position. (ECF No. 52–4 pp. 86, 87.) Hillard, however, confirmed during her deposition that defendant's staff never commented about her age or ethnicity. (*Id.* p. 88.) Meanwhile, Jordan explained that before filing her complaint, she did not speak with anyone about feeling discriminated against. (ECF No. 52–5 pp. 10, 11.)

Plaintiffs contend that the advancement process, which involves "unstructured, subjective interviews[,] disparately impact older workers" and benefit younger, less experienced applicants. (Pls.' Statement of Fact ¶¶ 93, 94.) In support of their position, plaintiffs rely upon their expert Dr. Roberto J. Cavazos's report. (ECF No. 52–8 pp. 36–45.) To counter plaintiffs' expert,

3

defendant submits the report of Dr. Christopher W. Young. (*Id.* pp. 47–65; ECF No. 52–9 pp. 1–17.)

Plaintiffs also allege that defendant prefers hiring Caucasian applicants. (Pls.' Statement of Fact ¶ 103.) To support this allegation, plaintiffs cite to an incident from 2018 where Hillard's personal possessions were moved to another desk on a different floor while Hillard was on leave so the Caucasian applicant who was later selected for the 2019 position could sit at Hillard's desk. (ECF No. 52–4 pp. 38–42.) Hillard was advised that she could return to her desk but was never able to do so. (*Id.*) Plaintiffs also allege that Jordan's attempts to speak with defendant's criminal division manager were often ignored. (ECF No. 52–5 p. 11.) Beyond these assertions, plaintiffs do not cite to any other incidents of discrimination.

## II. PROCEDURAL HISTORY

On May 21, 2021, plaintiffs filed their initial complaint, asserting violations of the New Jersey Law Against Discrimination (NJLAD) and Title VII of the Civil Rights Act of 1964. (ECF No. 1.) On September 15, 2021, defendant moved to dismiss the complaint due to plaintiffs' failure to exhaust their administrative remedies and to obtain a Right to Sue letter from the Equal Employment Opportunity Commission (EEOC). (ECF No. 4.) The EEOC issued plaintiffs with Right to Sue letters on September 29, 2021. (ECF No. 52–6 pp. 81, 90.) The Court, accordingly, denied defendant's motion to dismiss as moot. (ECF No. 8.)

On August 26, 2022, plaintiffs filed an amended complaint, in which they asserted additional facts and included a claim of disparate impact racial discrimination. (Am. Compl.) Defendant filed an answer to the amended complaint on September 9, 2022 (ECF No. 21), and the parties proceeded with discovery (*see* ECF No. 22). Pursuant to the Court's briefing schedule (*see* ECF

No. 49), the Motion and all related papers were filed on July 8, 2024. (ECF Nos. 50–54.)

### III. LEGAL STANDARD

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it will "affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if a "reasonable jury could return a verdict for the nonmoving party." *Id*. The movant "bears the burden of demonstrating the absence of any genuine issues of material fact." *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1080 (3d Cir. 1996). The party may satisfy its burden by "produc[ing] evidence showing the absence of a genuine issue of material fact" or "by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the movant makes this showing, the nonmovant must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the nonmovant must "point to concrete evidence in the record that supports each and every essential element of his case." *Orsatti v. N.J. State Police*, 71 F.3d 480, 484 (3d Cir. 1995).

The Court's role is not to weigh the evidence and decide the truth, but to determine if there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. In making that decision, "[a]ll facts and inferences are construed in the light most favorable to the non-moving party," and credibility determinations are for the fact finder. *Boyle v. Cnty. of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998); *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

## IV. DISCUSSION

### A. Title VII

"Title VII … prohibits both intentional and unintentional employment discrimination on the basis of race, color, religion, sex, or national origin." *Ricci v. DeStefano*, 557 U.S. 557, 577 (2009). If the discrimination is intentional, Title VII's "disparate treatment" provision is triggered. *Id.* If an employers' practices "are not intended to discriminate but in fact have a disproportionately adverse effect on minorities," then the "disparate impact" provision is triggered. *Id.* In other words, "disparate impact redresses policies that are 'fair in form, but discriminatory in operation.'" *Karlo v. Pittsburgh Glass Works, LLC*, 849 F.3d 61, 69 (3d Cir. 2017) (quoting *Griggs v. Duke Power Co.*, 401 U.S. 424, 431 (1971)).

To prevail on a Title VII claim, a plaintiff initially bears the burden of establishing, by a preponderance of the evidence, a *prima facie* case of … discrimination." *Prass v. New Jersey Dep't of Corr.*, 651 F. Supp. 3d 764, 768 (D.N.J. 2023). "To meet [t]his initial burden, a plaintiff [asserting disparate treatment] must demonstrate that '(1) [he] belongs to a protected class; (2) [he] was qualified for the position; (3) [he] was subject to an adverse employment action despite being qualified; and (4) under circumstances that raise an inference of discriminatory action.'" *Id.* (alterations in original) (quoting *Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 797 (3d Cir. 2003)). To state a *prima facie* case for disparate impact, a plaintiff must (1) identify "a specific, facially neutral policy"; (2) "proffer statistical evidence that the policy caused a significant [discriminatory] disparity"; and (3) "demonstrate that the disparity … complain[ed] of is the result of one or more of the employment practices [being] attack[ed]." *Katz v. Tata Consultancy Servs., Ltd.*, No. 22–07069, 2023 WL 5125518 (D.N.J. Aug. 10, 2023) (first quoting *N.A.A.C.P. v. N. Hudson Reg'l Fire & Rescue*, 665 F.3d 464, 476 (3d Cir. 2011)) (second quoting *Cronin v. Booz*

*Allen Hamilton Inc.*, No. 21–02085, 2022 WL 3357869, at \*4 (3d Cir. Aug. 15, 2022)).

"[I]f the plaintiff succeeds in establishing a *prima facie* case, the burden shifts to the defendant employer to 'articulate some legitimate, nondiscriminatory reason for the employee's rejection.'" *Prass*, 651 F. Supp. 3d at 768 (*Sarullo*, 352 F.3d at 797). "The employer may satisfy this burden by introducing evidence which, taken as true, would allow the factfinder to conclude that there was a nondiscriminatory reason for the unfavorable employment decision." *Id.* "The employer need not prove, however, that the tendered reason actually motivated the decision." *Id.* "In fact, the burden on the defendant at this second stage of the analysis has been described as 'relatively light.'" *Id.* (quoting *Burton v. Teleflex, Inc.*, 707 F.3d 417, 426 (3d Cir. 2013)).

"[I]f the defendant proffers evidence of a nondiscriminatory reason, the burden shifts back to the plaintiff to 'provide evidence from which a factfinder could reasonably infer that the employer's proffered justification is merely a pretext for discrimination.'" *Id.* (*Burton*, 707 F.3d at 426–27.) "To show pretext, the plaintiff must point to evidence that would reasonably permit the factfinder to either '(1) disbelieve the employer's articulated reasons or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action.'" *Id.* (*Burton*, 707 F.3d at 427.)

### 1. Timeliness

Before addressing defendant's merit-based arguments, I must resolve defendant's argument that its 2016 and 2018 decisions not to promote plaintiffs are time barred. These incidents fall outside the applicable statutory period. *Verdin v. Weeks Marine Inc.*, 124 F. App'x 92, 95 (3d Cir. 2005) (noting that "all discriminatory acts that are alleged to have occurred more than 300 days prior

to the EEOC filing are time-barred"). Plaintiffs, however, attempt to salvage their untimely claims by arguing that these instances of alleged discrimination are not separate, discrete acts but are part of the same continuing violation as the instances falling within the 300-day period. (Opp'n p. 10.)

A "narrow 'continuing violation' exception to the strict time requirements of Title VII" exists. *Prioli v. Cnty. of Ocean*, No. 218–00256, 2021 WL 4473159, at *5 (D.N.J. Sept. 30, 2021) (quoting *Orso v. ITT Corp.*, No. 89–00270, 1991 WL 85826, at *4 (D.N.J. May 17, 1991)). "To invoke the continuing violation exception, a plaintiff must: (1) 'demonstrate that at least one act occurred within the filing period;' and (2) 'establish that the [accused discriminatory conduct] is "more than the occurrence of isolated or sporadic acts of intentional discrimination."'" *Id.* (alteration in original) (quoting *Wilson v. U.S. Postal Serv.*, 814 F. App'x 719, 721 (3d Cir. 2020)). In other words, "[t]he 'continuing violation' theory applies in discrimination lawsuits where the alleged discriminatory action is ongoing by nature, rather than a distinct or isolated event." *Orso*, 1991 WL 85826, at *4. "That theory tolls the statute of limitations until the occurrence of the last instance of the allegedly discriminatory activity." *Id.*

Plaintiffs cite to *Jurinko v. Wiegand Co.*, 477 F.2d 1038, 1042 (3d Cir. 1973) to support their application of the continuing violation theory. In *Jurinko*, the Third Circuit determined that because the employer had an ongoing policy of not hiring married women, the plaintiffs' untimely claims could survive. (Opp'n p. 10.) However, beyond arguing that defendants' single interview process disparately impacts older workers (*id.*), plaintiffs do not identify defendant as having an ongoing, discriminatory policy.

"Title VII itself expressly identifies a failure to … otherwise take action with respect to 'compensation, terms, conditions or privileges of employment' as discrete acts." *Scrutchins v. New Jersey*, No. 12–05855, 2014 WL 6991908, at

8

\*6 (D.N.J. Dec. 10, 2014) (quoting 42 U.S.C. §2000e–2). "'The Supreme Court has held that a failure to promote and a refusal to hire are discrete acts of discrimination and/or retaliation,' and 'each of these acts starts a new clock for filing charges alleging that act.'" *Id.* (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113–14 (2002)). Although "incidents of failure to promote may constitute adverse actions, they are time barred and cannot trigger the continuing violation doctrine." *Priolo*, 2021 WL 4473159, at \*6; *Smith v. Amerada Hess Corp.*, No. 05–00560, 2005 WL 2897459, at \*4 n.11 (D.N.J. Oct. 31, 2005) (noting that the "continuing violation doctrine does not apply to revive untimely discrete acts of discrimination such as 'termination, *failure to promote*, denial of transfer, or refusal to hire'" (quoting *Nat'l R.R. Passenger Corp.*, 536 U.S. at 114)). Accordingly, the continuing violation doctrine does not save the claims relating to defendant's 2016 and 2018 hiring decisions. My discussion of plaintiffs' claims will thus be limited to defendant's hiring decision from 2019.

### 2. <u>Age</u>

Plaintiffs concede that age is not a protected class under Title VII. (Opp'n p.9 n.1.) *See Bostanci v. New Jersey City Univ.*, 476 F. App'x 499, 501 (3d Cir. 2012) ("Age is not a protected class under Title VII."). Instead, age-based discrimination claims are to be brought under the Age Discrimination in Employment Act (ADEA). Since Eleventh Amendment immunity protects states from ADEA suits, plaintiffs recognize that this claim cannot survive in this Court. *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690 (3d Cir. 1996). Accordingly, I will not address defendant's remaining arguments as to this claim.

### 3. Race

#### a. Disparate Impact

Defendant argues that because plaintiffs failed to proffer statistical evidence that the selection process caused a significant disparity, plaintiffs cannot establish a *prima facie* disparate impact claim. (Mov. Br. pp. 27–29.) Plaintiffs argue that because the disparate impact here is so obvious and predictable, the Court may find that they satisfied their burden without statistical evidence. (Opp'n pp. 21, 22.)[2]

"It is insufficient for [an] employee to 'simply allege that there is a disparate impact on workers, or point to a generalized policy that leads to such an impact.'" *Cronin*, 2021 WL 1712346, at *12 (quoting *Smith v. City of Jackson*, 544 U.S. 228, 241 (2005)). Instead, "[t]he plaintiff must prove causation; 'that is, the plaintiff must offer statistical evidence of a kind and degree sufficient to show that the practice in question has caused' the harm alleged." *Id.* (quoting *Watson v. Forth Worth Bank & Tr.*, 487 U.S. 977, 994 (1988)). "The statistical evidence 'must be limited in scope in accordance with [Federal Rule of Civil Procedure] 26(b)(1) and tied to the allegations of plaintiff's complaint.'" *Id.* (quoting *Kresefsky v. Panasonic Commc'ns & Sys. Co.*, 169 F.R.D. 54, 66 (D.N.J. 1996)). For example, "statistics based on an applicant pool containing individuals lacking minimal qualifications for the job would be of little probative value." *Watson*, 487 U.S. at 997. The Supreme Court made an exception to this rule in the context of a national origin case wherein a public school failed to provide adequate instructional procedures for students who did not speak English. *Lau v. Nichols*, 414 U.S. 563 (1974); *see Mitchell v. Bd. of*

---

[2] Although plaintiffs concede that their age-based Title VII claims cannot survive, in opposition to defendant's disparate impact arguments, plaintiffs appear to mostly focus on the viability of their age-based disparate impact claims. (Opp'n p. 9 n. 1, 12–23.) I address those arguments to the extent they apply to plaintiffs' race-based disparate impact claims.

10

*Trustees of Pickens Cnty. Sch. Dist. A*, 599 F.2d 582, 585–86 (4th Cir. 1979) (holding that while "the challenged policy did not permit the sort of reliable statistical proofs of actual consequences frequently available and useful in disparate impact cases," because inferences of discriminations rationally supported a finding of disparate impact, plaintiff satisfied their burden without proffering statistical evidence).

In support of their race-based disparate impact claim, plaintiffs refer to defendant's 2020 workforce analysis report, which includes a breakdown of defendant's employees' ethnicity. (Opp'n p.14; ECF No. 52–11 pp.12–69.) However, rather than explain how this data supports their claims, plaintiffs argue that the record and defendant's hiring practices speaks for themselves. (Opp'n pp.14–18.) I disagree. Plaintiffs must muster some analysis that demonstrates that the data supports their claims. "Simply alleg[ing] that there is a disparate impact on workers" is insufficient. *Cronin*, 2021 WL 1712346, at *12.

The fact that plaintiffs received lower interview ratings than other applicants does not automatically demonstrate that plaintiffs were being racially discriminated against, particularly when considering that other African-American applicants who were high interview scorers were promoted to Judiciary Clerk 4 positions. *See Carroll v. Sears, Roebuck & Co.*, 708 F.2d 183, 189 (5th Cir. 1983) (holding that "plaintiffs failed to make a *prima facie* showing of discrimination against [African-Americans] in hiring or promotion" because "the fact that [African-Americans] score[d] lower [in their interviews] does not automatically result in disqualification of disproportionate number of [African-Americans]"). Furthermore, to the extent plaintiffs attribute their low interview scores to defendant having failed to comply with its hiring protocol (*see e.g.*, Pls.' Statement of Fact ¶7), which defendant disputes (*see* ECF No. 54–1 ¶¶76–92), plaintiffs fail to proffer sufficient evidence to demonstrate

that had the protocol been followed, plaintiffs would have been selected for the Judiciary Clerk 4 positions.

Accordingly, no material issue of fact is in dispute, and I find that plaintiffs fail to establish the required causal connection between defendant's challenged selection process and discrimination in the work force.

### b. Disparate Treatment

The parties agree that plaintiffs are part of a protected class and that they were denied the opportunity to advance to Judiciary Clerk 4 positions despite being qualified. (*See* Mov. Br. pp.19–25.) They, however, dispute whether a person not in a protected class was treated more favorably. (*Id.* p.22.) In other words, defendant argues that plaintiffs not only fail to establish a *prima facie* case of discrimination, but to the extent the burden shifts to defendant, a legitimate, non-discriminatory reason existed for its decision. (*Id.* pp.22, 23.)

To satisfy the fourth element of a discrimination action in the context of a failure to promote case, a plaintiff must allege that "the promotion went to someone with equal or lesser qualifications who was not in the protected class." *Smith v. Twp. Of E. Greenwich*, 519 F. Supp. 2d 493 (D.N.J. 2007) (quoting *Rogers v. Alternative Res. Corp.*, 440 F. Supp.2d 366, 371 (D.N.J. 2006)). Although the 2019 Judiciary Clerk 4 position was awarded to a Caucasian woman younger than plaintiffs, this applicant was the highest ranked. (ECF No. 52–4 pp.44, 45; ECF No. 52–5 p.10; ECF No. 52–6 p.92; ECF No. 52–7 pp.1–3.) Plaintiffs ranked significantly lower than the selected applicant. (ECF No. 52–8 p.2.) While plaintiffs attribute their low interview scores to defendant's interview process and deviation from its protocol, plaintiffs cannot demonstrate that had it not been for their race, they would have been selected for the position. Accordingly, the burden does not shift back to defendant to proffer a legitimate, nondiscriminatory reason for not promoting plaintiffs.

12

*Prass*, 651 F. Supp. 3d at 768.  I, however, note that had the burden shifted, plaintiffs' poor performance during the panel interview would have satisfied defendant's burden.  *See Cross v. New Jersey*, 613 F. App'x 182, 185 (3d Cir. 2015) (holding that defendant satisfied its burden to demonstrate a legitimate, nondiscriminatory reason for not promoting the plaintiff wherein the plaintiff performed poorly during the panel interview).

### B. NJLAD

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. Const. amend. XI.  "As a general proposition, a suit by private parties seeking to impose liability which must be paid from public funds in a state treasury is barred from federal court by the Eleventh Amendment, unless Eleventh Amendment immunity is waived by the State itself or by federal statute."  *Prass*, 651 F. Supp. 3d at 771.  "Absent an explicit waiver of Eleventh Amendment immunity, a State may not be sued in the federal courts."  *Id.*

It is well established that "a plaintiff may not sue the State of New Jersey, or its alter egos, under the NJLAD in federal court."  *Garcia v. Richard Stockton Coll. of New Jersey*, 210 F. Supp. 2d 545, 550 (D.N.J. 2002); *Prass*, 651 F. Supp. 3d at 771 (noting that "the text of the NJLAD does not contain language that waives the State's Eleventh Amendment immunity in federal court").  "Although the NJLAD clearly identifies the State as a potential defendant, and authorizes private suits 'in Superior Court,' it makes no mention of federal court."  *Garcia*, 210 F. Supp. 2d at 550 (quoting N.J. Stat. Ann. §10:5–13).  Thus, "New Jersey has not stated 'by the most express language' that it is open to private suits under the NJLAD in federal court."  *Id.* (quoting

*College Savings Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 676 (1999)).

No dispute exists "the state judiciary 'is an integral part of the state' and, consequently, all claims against it are barred by the Eleventh Amendment." *Gencarelli v. Superior Ct. of New Jersey*, No. 04–03332, 2005 WL 1490590, at *3 (D.N.J. June 22, 2005) (quoting *Hunter v. Supreme Court of New Jersey*, 951 F. Supp. 1161, 1177 (D.N.J.1996)).

Plaintiffs argue that because defendant did not raise this defense until the summary judgment stage, it effectively waived application of the Eleventh Amendment. (Opp'n pp. 7–9.) "[T]he Eleventh Amendment is[, however,] jurisdictional in the sense that it is a limitation of the federal court's judicial power, and … can be raised at any stage of the proceedings." *Edelman v. Jordan*, 415 U.S. 651, 677–78 (1974). Hence, as to plaintiffs' NJLAD claims, defendant is entitled to Eleventh Amendment immunity.[3] *Gencarelli*, 2005 WL 1490590, at *3.

## V. CONCLUSION

For the reasons stated above, the Motion is **GRANTED**.

>   /s/ Edward S. Kiel
>   **EDWARD S. KIEL**
>   **UNITED STATES DISTRICT JUDGE**

Dated: March 31, 2025

---

[3] Defendant argues in the alternative that the NJLAD's statute of limitations bars plaintiff's failure to promote claims arising from 2016 and 2018. (Mov. Br. pp. 17, 18.) Since the Eleventh Amendment bars the NJLAD claims, I find that there is no need to address the statute of limitations issue.

14